# Knabe *v.* Burden.

### Statutory Action in nature of Ejectment.

1. *U. S. receiver's certificate of entry; State patent founded on act of Congress.*—A certificate of entry issued by the receiver of a local land-office of the United States, regular on its face, vests in the person to whom it is issued such a title as will support ejectment, or the statutory action in the nature thereof (Code, § 2782); but it is not conclusive, and can not prevail against a patent of older date issued by the State, and founded on an act of Congress.

2. *Presumption in favor of patent; sale of sixteenth-section lands.* Under the act of Congress granting lands to Alabama in aid of public schools (4 U. S. Stat. 237), and the act of the General Assembly of Alabama approved January 15th, 1828 (Sess. Acts. 1828, p. 31), a sale of the sixteenth section of any township was authorized, if made with the consent of the legal voters of the township, as determined by an election held for the purpose; and when a patent from the State for such lands, or a part thereof, is produced, the presumption will be indulged that an election was legally held, and that it resulted in favor of a sale.

3. *Judicial knowledge; public lands and surveys.*—The courts take judicial notice of the surveys of the public lands by the General Government, and of the location and relative situation of the lands officially surveyed and mapped out under the authority of acts of Congress; and therefore the fact is judicially known, that "township twenty-two (22), range thirteen (13) east," in Randolph county, is a fractional township, in which the sixteenth section contains less than 320 acres, and is therefore entitled, under the act of Congress, to an additional half-section (320 acres) for school purposes.

4. *Presumption in favor of patent, from lapse of time.*—A patent having been granted by the State more than thirty years ago, purporting to have been issued "in pursuance of the act approved January 15th, 1828, entitled an act to authorize the sale of sixteenth sections and for other purposes," and conveying a small tract of land described as "Fraction C of fractional section seventeen (17)" of a township which, as the court judicially knows, contains a deficient sixteenth section, and was therefore entitled, under the act of Congress of May 20th 1826, to have additional lands selected and set apart for school purposes by the Secretary of the Treasury at Washington; the presumption will be indulged, that the tract conveyed was duly selected and set apart by that officer for the designated purpose, when it also appears that there has been open and continous adverse possession under the patent since its issue.

APPEAL from the Circuit Court of Randolph.

Tried before the Hon. JAS. R. DOWDELL.

This action was brought by Julian P. Knabe, against

Calvin J. Burden, to recover the possession of a tract of land, which was described in the complaint as "Fraction C, in section 17, township 22, range 13, in said county;" and was commenced on the 14th April, 1887. The plaintiff claimed the land under a certificate of entry dated December 2d, 1885, which purported to be issued from "Register's Office at Montgomery, Ala., and was signed by "A. A. Mabson, receiver;" and in which the land was described as "Fraction C, quarter of section 17, in township 22, of range 13 E., containing 44.28 acres;" and he offered the duplicate certificate in evidence on the trial  The defendant claimed the land under a patent issued by the State of Alabama to Calvin J. Ussery, which was dated January 21st, 1858, and purported to be issued "in pursuance of the act approved January 15th, 1828, entitled An act to authorize the sale of sixteenth sections, and for other purposes;" and in which the land conveyed was described as "Fraction C of fractional section 17, township 22, range 13, containing 46 acres, more or less." The plaintiff objected to the admission of this patent as evidence, on these grounds: "(1) because it is illegal evidence; (2) because it fails to show any right in the State of Alabama to grant said patent; (3) because it fails to show that the land therein described was ever selected or set apart by the State of Alabama, as required by law; (4) because it fails to show that the United States ever parted with the title to said lands to the State of Alabama." The court overruled these several objections, and admitted the transcript as evidence; and the plaintiff excepted. It was agreed and admitted, as the bill of exceptions states, "that the defendant has a regular chain of titles to said land back to and from Calvin J. Ussery; and that he, and those through whom he claims, have been in the open, adverse, and notorious possession of said land, exercising acts of ownership, from the 21st January, 1858, up to the present time, as against all the world; and that the rent of the land, for the past three years, is worth $10.50 per year, and that the permanent improvements are worth more than the rent." This being "substantially all the evidence," the court charged the jury, on request, that they must find for the defendant, if they believed the evidence. The plaintiff excepted to this charge, and he here assigns it as error, together with the admission of the transcript as evidence.

S. HENDERSON, WM. H. SMITH, and W. M. LACKEY, for appellant, cited *Bullock v. Wilson*, 2 Port. 436; *Saltmarsh*

*v. Crommelin,* 24 Ala. 347; *Minter v. Crommelin,* 18 How. 87; *Iverson & Robinson v. Dubose,* 27 Ala. 418; 3 U. S. Statutes, 491.

N. D. DENSON, *contra,* cited *Bullock v. Wilson,* 2 Porter, 436; *Masters v. Eastis,* 3 Porter, 368; *Patterson v. Winn,* 11 Wheat. 380; *Polk v. Wendell,* 9 Cranch, 98; *McArthur v. Carrie,* 32 Ala. 75.

SOMERVILLE, J.—The title of the plaintiff to the land in controversy is based on a certificate of entry, issued by the register of the United States local land-office at Montgomery, which instrument bears date December 2d, 1885. The statute provides, that such a certificate, when lawfully issued, shall "vest the legal title in the holder, or his assignee, and must be received as evidence of such title." Code, 1886, § 2782; *Case v. Edgeworth,* 87 Ala. 204. This statute does not differ in substance from the act of 1812, which was construed to confer on the holder of the certificate such a title as to maintain an action of ejectment, which is a possessory action, and capable of being sustained on the right of possession. It was held not to confer *the fee* of the land, which remained vested in the Government in trust for the holder of the certificate, until the patent was issued. *Bullock v. Wilson,* 2 Port. 436; *Masters v. Eastis,* 3 Port. 368; *Deffeback v. Hawke,* 115 U. S. 392. The statute was not intended to determine that the holder of such certificate held more than an equitable title, as against the United States Government, before the patent was issued. As evidence of such title it can only be *prima facie,* or merely presumptive. The legislature had neither the power nor the intention to make it conclusive.—Sedgwick & Wait on Trial of Titles, (2d Ed.) §§ 890–892; *Wilcox v. Jackson,* 13 Pet. 498; Tiedman on Real Prop., § 746.

Upon this evidence, the plaintiff was *prima facie* entitled to recover the land, and the *onus* was cast on the defendant to show a better title. This he attempted to do by introducing in evidence a patent from the State of Alabama, issued in due form on January 21st, 1858, to one Ussery, through whom defendant claims title by unbroken chain. It is also shown that the defendant, and those through whom he claims, have been in the open, notorious and adverse possession of the land, exercising acts of ownership over it, since the issue of the patent, or for more than thirty years. To

the introduction of this instrument it was objected, that there
was no preliminary evidence of any right in the State of
Alabama to make a grant of the lands described, or that the
State had ever acquired the title to the lands from the Gen-
eral Government.

Such a patent is made evidence by statute, without further
proof.—Code, 1886, § 2781.   It is commonly said to be the
highest evidence of title, and raises a presumption that all
preliminary proceedings have been taken which justify its
issue.—3 Wash. Real Prop. (3d Ed.), 205; *Polk v. Wendell*,
9 Cranch, 87; *Minter v. Crommelin*, 18 How. 87.

The defendant's contention is, that the lands were granted
by act of Congress to the State of Alabama for the support
of public schools, by virtue of the statute approved May
20, 1826 (4 U. S. Stat. at Large, p. 179), having been
selected by the Secretary of the Treasury pursuant to the
duty imposed upon him by section 2 of that act.

There can be no doubt of the legal proposition, that a title
to Government lands may pass by legislative *grant*, as effect-
ually as by a patent.   Such a grant, therefore, by Congress,
necessarily prevails over a subsequent title asserted by the
holder of a subsequent patent, or certificate of entry from the
General Government.—*Megerle v. Ashe*, 27 Cal. 322;
87 Amer. Dec. 76.   And in such case, the subsequent title
may be assailed collaterally at law, in an action of ejectment.
The principle being, that a patent from the United States
can not affect a pre-existing title in a third person, it is held
to be *void* as against a prior title acquired from the same
source, either by legislative grant, by patent, treaty, or other-
wise.   And being a mere nullity, it may be declared so at
law, without resort to a court of equity.—*Sherman v. Buick*,
93 U. S. 209; *City of New Orleans v. DeArmas*, 9 Pet. 223;
*Bates v. Herron*, 39 Ala. 117, and cases cited; *Stoddard v.
Chambers*, 2 Howard, (U. S.) 317; *Patterson v. Winn*,
11 Wheat. 380; Sedgwick & Wait's Trial of Title (2d Ed.),
§ 887.

To prove his title, then, it is necessary for the defendant,
not only to show a grant from the General Government, but
that the grant has attached to the particular lands in contro-
versy.   If the taking effect of the grant depends upon any
condition, precedent or subsequent, the performance of this
condition must be made to appear, either positively or pre-
sumptively.—*Megerle v. Ashe*, 87 Amer. Dec. 76, *supra*.

The patent from the State of Alabama, dated January 21st,

1858, purports to have been executed under the authority of the act of the Alabama legislature, approved January 15th, 1828, which authorized the sale of the sixteenth sections granted by Congress for the support of public schools. This act was passed in exact conformity to the act of Congress approved March 2, 1827, which permitted such sales by consent of the inhabitants of each township or district.—4 U. S. Stat. 237. The mode of giving consent was by an election, to be held on a fixed day, to take the sense of the legal voters on the subject. The issue of the patent, under the principle above announced, raises a presumption that this election was legally held, and that the requisite consent was given to the sale.—*Stringer v. Young*, 3 Pet. 320; *Stark v. Mather*, 12 Amer. Dec. 565, *note*.

It may be said, however, that the land in controversy is no part of the sixteenth section, and was, therefore, not subject to sale under the act of 1828. It is described as "Fraction C of fractional section 17, township 22, R. 13 (E.), containing forty-six acres, more or less." We are authorized to take judicial notice of the United States government surveys in this State, and of the location and relative situation of the lands officially surveyed and mapped out under the authority of the laws enacted by Congress.—*Landfear v. Mestier*, 89 Amer. Dec. 689, and *note; Chambers v. Ringstaff*, 69 Ala. 140. We, therefore, know judicially, as the trial court is presumed to have known, that this land was a part of a fractional township, in which the sixteenth section contained but four forties, on the south line, or something over 160 acres. The act of Congress approved May 20, 1826 (4 U. S. Stat. 179), appropriating lands for the support of schools in certain townships and fractional townships not before provided for, authorizes the selection of a specified quantity of unappropriated lands proportioned to the entire quantity in each fractional township. The total area of fractional township 22 in question is known by the government survey to be 8,703 49-100 acres. This is greater than one fourth, and less than one half of an ordinary township, which we know contains approximately 23,040 acres. The quantity authorized to be selected by the act is, therefore, by its express terms, one half section, or 320 acres. The law made it the duty of the Secretary of the Treasury of the General Government to select these lands out of "any unappropriated lands in the land district where the township for which any tract is selected may be situated;" and when so selected,

[Hall Safe and Lock Co. v. Harwell.]

they are to be "held by the same tenure, and upon the same terms for the support of schools in such township, as section number sixteen (16) is, or may be held."—4 U. S. Stat., sec. 2, 179. They would, therefore, when selected, be subject to sale under the authority given by the act of the Alabama legislature approved January 15, 1828.

The question, then, is reduced to this: Can we *presume a selection* of the lands in controversy by the Secretary of the Treasury, pursuant to his official duty under the act of Congress, approved May 20th, 1826, from the fact, that the State of Alabama has, in a most emphatic manner, asserted a right to the land as school land, issued a patent to it more than thirty years ago, and there has been an uninterrupted, open and adverse occupancy by the defendant, and those under whom he claims title, for this great length of time? The cases are numerous where like presumptions have been made to furnish a connecting link in the title of the property held and claimed for a period of twenty years or over, as a "means of maintaining peace, order and harmony, in the relations of civil society." And under the past decisions of this court, we feel authorized to hold that, under the facts of this case, the presumption is legitimate, that the proper selection of the land in controversy must have been made before the State asserted title to it, and issued the patent to Ussery in January, 1858.—*Woodstock Iron Co. v. Fullenwider*, 87 Ala. 584; *Bozeman v. Bozeman*, 82 Ala. 384; *Long v. Parmer*, 81 Ala. 384; *Gosson v. Ladd*, 77 Ala. 223; *Matthews v. McDade*, 72 Ala. 377; *Kelly v. Hancock*, 75 Ala. 229; *McArthur v. Carrie*, 32 Ala. 75; 2 Whart. on Ev. § 1338.

The Circuit Court did not err either in admitting the patent in evidence, or in the charge given; and the judgment is affirmed.